# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
AUG 22 2017
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

SCG FOR C. RD 8/22/17

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

One (1) Silver iPhone 6 Cellular Phone
ICC ID: BCG-E2817A; IC: 579C-E2817A;
IMEI: 354385063061227

Case No. '17MJ8867

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein.

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841,846 | Possession of Marijuana with the Intent to Distribute; Conspiracy |

The application is based on these facts:

See attached affidavit of DEA Special Agent Sean Mann, incorporated herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: ___________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Sean Mann, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/22/17

[signature]
*Judge's signature*

City and state: El Centro, CA

Barbara L. Major, U.S. Magistrate Judge
*Printed name and title*

ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The property to be searched is described as:

**One (1) silver iPhone 6 Cellular Telephone**
ICCID: BCG-E2817A
IC: 579C-E2817A
IMEI: 354385063061227

Currently in the possession of the Drug Enforcement Administration, San Diego Field Division, Imperial County District Office, 2425 La Brucherie Road, Imperial, California, 92251

**ATTACHMENT B-1**

ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of March 1, 2017 to June 30, 2017:

a. tending to identify attempts to import and possess with intent to distribute marijuana or other federally controlled substances from Mexico into the United States and to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 21, United States Code, Section 841 and 846.**




**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

IN THE MATTER OF THE SEARCH OF

**One (1) Silver iPhone 6 Cellular Phone**
ICC ID: BCG-E2817A
IC: 579C-E2817A
IMEI: 354385063061227

**One (1) Black Motorola Cellular Phone**
Model: XT1601
FCC ID: IHDT56VD1
IMEI: 54138073999088

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

'17MJ8867

I, Sean Mann, a Special Agent with the United States Drug Enforcement Administration ("DEA"), having been duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of an application for a warrant to search the following:

   a. One (1) silver iPhone 6 Cellular Telephone; ICC ID: BCG-E2817A; IC: 579C-E2817A; IMEI: 354385063061227, (**Target Telephone 1**)

   b. One (1) Black Motorola Cellular Telephone; Model: XT1601; FCC ID: IHDT56VD1; IMEI: 54138073999088, (**Target Telephone 2**), hereinafter **Target Telephones**

2. Agents seized **Target Telephones** on June 30, 2017, from Jose Julian ESPINOZA-MARTINEZ at the time he was arrested at the Highway 86 Checkpoint, north of Westmoreland, California, for the possession of marijuana with the intent to distribute, in violations of Title 21, United States Code, Sections 841(a)(1). At the time of his arrest, ESPINOZA-MARTINEZ was the driver and sole occupant of a Trailmobile Trailer,

Bearing California license plate 4HJ6358. **Target Telephones** are currently in the possession of Drug Enforcement Administration, San Diego Field Division, Imperial County District Office, 2425 La Brucherie Road, Imperial, California, 92251 (Seized Property Vault).

3. Based on the information below, there is probable cause to believe that a search of **Target Telephones** will produce evidence of the aforementioned crimes, as described in Attachment B-1 and B-2.

## EXPERIENCE AND TRAINING

4. I, Sean Mann, am employed as a Special Agent with the Drug Enforcement Administration (DEA) and have so been employed since September 2016. Upon being hired as a DEA Special Agent, I attended a twenty week DEA academy in Quantico, Virginia where I received training in all aspects of narcotics investigations.

5. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal, in the enforcement of the drug laws, investigation of drug trafficking and money laundering organizations, drug recognition and terminology, undercover operations, interviewing techniques, and the use of electronic surveillance.

6. I have conducted investigations and/or participated in investigations related to the unlawful importation, possession with intent to distribute, and distribution of controlled substances. In conducting/participating in these investigations, I have used a variety of investigative techniques and resources, including physical and electronic surveillance and various types of informants and cooperating sources. Through my training, experience, and interaction with experienced agents, and other narcotics investigators, I have become familiar with the methods employed by narcotics traffickers in general, and large Mexico-based Drug Trafficking Organizations (DTO) in particular, to smuggle, safeguard, and distribute narcotics, and to collect and launder narcotics-related

proceeds.

7. Based on your affiant's experience, participation in the investigation of narcotics organizations, conversations with other agents, including those from the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), Bureau of Alcohol, Tobacco and Firearms (ATF), U.S. Customs and Border Protection (CBP), and other state and local law enforcement officers familiar with the narcotics trafficking and money laundering matters, your affiant has a clear understanding of the methods used by narcotics trafficking organizations.

8. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers. I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I know that professional narcotics operations depend upon maintaining their extensive contacts. The use of telephones is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain to the local traffickers. The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers. I also know that narcotics traffickers often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

9. Based upon my training and experience as a Special Agent, and consultations

with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds; and

g. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a

smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to identify attempts to import and possess with intent to distribute marijuana or other federally controlled substances from Mexico into the United States and to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation and possession with intent to distribute marijuana or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search cellular telephones that are believed to contain evidence of violations of 21 U.S.C. §§ 841 and 846.

13. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other HSI Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## **FACTS SUPPORTING PROBABLE CAUSE**

14. On June 30, 2017, a Border Patrol Agent (BPA) was working the primary lane of traffic at the United States Border Patrol (USBP) Highway 86 Checkpoint north of Westmorland, California. At approximately 12:15 a.m., a 2006 International Truck hauling a trailer approached the primary inspection area. The vehicle was driven by a male, later identified as, Jose Julian ESPINOZA-MARTINEZ, a Mexican citizen. During questioning by the BPA, a Border Patrol Canine displayed a positive alert on the vehicle. The BPA asked ESPINOZA-MARTINEZ to go to secondary inspection for further investigation.

15. In the secondary inspection area, a BPA and his Human/Narcotic Detection

Dog (HNDD) conducted a sniff of the exterior the tractor and trailer. The BPA's canine partner displayed a positive alerted to the rear doors of the trailer, which were sealed with a yellow plastic seal.

16. During the subsequent search of the trailer, BPAs discovered and extracted a total of 150 bundles, which contained a green leafy substance. A Narcotics Identification Kit was used on the green leafy substance found in the bundles that provided positive results for the properties of marijuana. The total weight of the 150 bundles of marijuana was approximately 1,621.593 kilograms (3,575.000 pounds).

17. On June 30, 2017, at approximately 2:17 a.m., Agents of the Drug Enforcement Administration (DEA) were notified by USBP and responded to the USBP Highway 86 Checkpoint. At approximately 6:20 a.m., a United States Border Patrol Agent read the Miranda Warnings to ESPINOZA-MARTINEZ in the Spanish language verbatim from a DEA-13A card. After being read his rights, ESPINOZA-MARTINEZ agreed to speak to agents.

18. During the subsequent interview, ESPINOZA-MARTINEZ stated that an individual asked him to pick up a truck at the USA Gas station located at, 1791 Maggio Road, Calexico California. After picking up the truck, ESPINOZA-MARTINEZ was instructed to pick up an already loaded trailer from a trailer truck yard located at 410 E. Heber Road, Heber, California, and drive to an unknown location in Anaheim, California. A destination address was to be texted to ESPINOZA-MARTINEZ while in route. ESPINOZA-MARTINEZ, a professional truck driver, stated he was not given any manifest information on what the trailer contained nor was he provided with a truck driver's log book. ESPINOZA-MARTINEZ stated he was told by an individual that he was hauling toilet paper. ESPINOZA-MARTINEZ stated he was given $300 to be given to a crew to unload the cargo and an additional $200 for travel expenses. ESPINOZA-MARTINEZ stated he was unaware of the exact contents of his cargo beyond what he was told, which was that he was hauling toilet paper. Upon observing United States Border

Patrol Agents removing cargo from the trailer, while in secondary inspection, ESPINOZA-MARTINEZ stated he determined the cargo was something illegal.

19. ESPINOZA-MARTINEZ was thereafter arrested for violations of Title 21, United States Code, Sections 841 and 846. When I arrived on scene, **Target Telephones** were in an evidence bag. Border Patrol seized the **Target Telephones** from ESPINOZA-MARTINEZ' possession incident to his arrest.

20. Based on my training, experience, the location of the drugs, and the manner of concealment, I believe the packages consisted of drugs intended for distribution. Based upon my experience and investigation in this case, I believe that ESPINOZA-MARTINEZ, as well as other persons as yet unknown, were involved in an on-going conspiracy to distribute marijuana. Based on my experience investigating narcotics smugglers, I also believe that ESPINOZA-MARTINEZ may have used the **Target Telephones** to coordinate with co-conspirators regarding the importation and distribution of the marijuana, and to otherwise further this conspiracy both inside and outside of the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones, which may identify other persons involved in narcotics trafficking activities.

21. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of ESPINOZA-MARTINEZ and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein. Moreover, this warrant seeks data from the **Target Telephones** for the period of March 1, 2017 through June 30, 2017.

**METHODOLOGY**

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone(s) and subject it/them to analysis. All forensic analysis of the data contained within the telephone(s) and memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that **Target Telephones** were used to facilitate the offense of importation of controlled substances. **Target Telephones** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 841, 846.

26. Because **Target Telephones** were seized, there is also probable cause to believe that evidence of the illegal activities committed by ESPINOZA-MARTINEZ, as described in Attachments B-1 and B-2, continue to exist on **Target Telephones**.

27. Therefore, I respectfully request that the Court issue a warrant authorizing DEA Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize items listed in Attachments B-1 and B-2 using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Sean Mann
Special Agent
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 22 day of August, 2017.

HONORABLE BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE